IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-235-D

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| SHAQUANDRA MCALLISTER, | ) |
| Defendant. | ) |

On November 6, 2020, Shaquandra McAllister ("McAllister") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 401] and filed a memorandum and records in support [D.E. 403, 405]. On December 9, 2020, the United States responded in opposition [D.E. 407]. As explained below, the court denies McAllister's motion.

I.

On November 5, 2018, pursuant to a written plea agreement, McAllister pleaded guilty to two counts. Count one charged conspiracy to distribute and possess with intent to distribute 28 grams or more of cocaine base (crack), a quantity of cocaine, and a quantity of heroin and count two charged possession with intent to distribute and distribution of 28 grams or more of cocaine base (crack) and a quantity of cocaine and aiding and abetting. See [D.E. 180, 181, 270]. On April 17, 2019, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 270, 278, 284]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated McAllister's total offense level to be 25, her criminal history category to be II, and

her advisory guideline range to be 63 to 78 months' imprisonment. See [D.E. 270, 284]. After granting the government's downward departure motion and thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced McAllister to 42 months' imprisonment on count one and 42 months' imprisonment on count two, to be served concurrently. See [D.E. 278, 283, 284].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious

2

medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1.  Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.—

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a)

---

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

Case 5:18-cr-00235-D   Document 418   Filed 02/16/21   Page 4 of 8

factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for McAllister's request for compassionate release, McAllister contends that she has exhausted her administrative remedies. See [D.E. 403] 3; [D.E. 405] 2–3. On September 4, 2020, McAllister submitted a request for compassionate release to the BOP. See [D.E. 403-6]; [D.E. 405] 3. On September 17, 2020, the BOP denied McAllister's request. See [D.E. 403-6]; [D.E. 405] 3. The government concedes that McAllister has exhausted her administrative remedies. See [D.E. 407] 2. Accordingly, the court addresses McAllister's claim on the merits.

McAllister seeks compassionate release pursuant to section 3582(c)(1)(A). In support of her request, McAllister cites the COVID-19 pandemic, her health conditions, including obesity and asthma, and that she needs to provide care for her children and aging mother. See [D.E. 401] 1–4; [D.E. 403] 2; [D.E. 403-2]; [D.E. 405] 2, 5. McAllister also cites the conditions at FCI Alderson, her rehabilitation efforts, and her release plan. See [D.E. 401] 1–4; [D.E. 401-1]; [D.E. 403] 2, 4–5; [D.E. 405] 6.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). While McAllister states that she suffers from obesity and asthma, she has not demonstrated that she is not going to recover from those conditions or that they cannot be treated while McAllister serves her sentence. Accordingly,

5

reducing McAllister's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, McAllister's health conditions, her need to provide care for her mother and children, the conditions FCI Alderson, her rehabilitation efforts, and her release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing McAllister's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

McAllister is 31 years old and engaged in very serious criminal behavior between August 2017 and June 19, 2018. See PSR ¶¶ 12–33. McAllister was a central figure in a gang-related drug conspiracy. See id. While the conspiracy's leader, Marquavious Harold Carr ("Carr"), was incarcerated, McAllister facilitated Carr's desire to continue his drug trafficking activities from prison. See id. Specifically, McAllister acted as Carr's intermediary, passing numerous messages from Carr to other members of the drug conspiracy, coordinating the organization's drug trafficking activities, delivering drugs to Carr's distributers, and handling thousands of dollars in U.S. currency derived from drug transactions. See id. Ultimately, McAllister was responsible for trafficking 393.85 grams of cocaine, 84.61 grams of cocaine base, and 45 grams of heroin. See id. ¶ 31. Heroin is particularly lethal. McAllister also is a violent recidivist with convictions for assault with a deadly weapon and injury to personal property. See id. ¶¶ 37–38. Moreover, McAllister has performed

6

Case 5:18-cr-00235-D   Document 418   Filed 02/16/21   Page 6 of 8

poorly on supervision. See id. ¶ 37. While McAllister has taken some positive steps while incarcerated on her federal sentence, she has sustained infractions for giving or accepting money without authorization and disruptive conduct. See [D.E. 401-1]; [D.E. 405] 6; [D.E. 407-1]. The court also has considered McAllister's exposure to COVID-19, her health conditions, her need to care for her mother and children, her rehabilitation efforts, and her release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat McAllister, the section 3553(a) factors, McAllister's arguments, the government's persuasive response, McAllister's misconduct in prison, and the need to punish McAllister for her serious criminal behavior, to incapacitate McAllister, to promote respect for the law, to deter others, and to protect society, the court declines to grant McAllister's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for McAllister's request for home confinement, McAllister seeks relief under the CARES Act. See [D.E. 401] 1; [D.E. 403] 3–4; [D.E. 405] 1, 4–5. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses McAllister's request for home confinement.

## II.

In sum, the court DENIES McAllister's motion for compassionate release [D.E. 401], and DISMISSES McAllister's request for home confinement.

SO ORDERED. This 16 day of February 2021.

JAMES C. DEVER III
United States District Judge